**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

|  |  |
|---|---|
| IN RE:<br><br>**Jarrett L. Moye,**<br>        **Debtor.** | **CHAPTER 13**<br>**CASE NO.: 18-11224-SDB** |
| **Selene Finance LP,**<br>                              Movant,<br><br>v.<br><br>**Jarrett L. Moye,**<br>        **Debtor.**<br>**Huon Le,**<br>        **Trustee,**<br>                              Respondents. | CONTESTED MATTER |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, Selene Finance LP, (the "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Jarrett L. Moye, (the "Debtor"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on August 28, 2018.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest.  Movant holds a security interest in the Debtor's real

property now or formerly known as 2303 Kim Court, Hephzibah, Georgia 30815 (the "Property") by virtue of a Security Deed dated June 3, 2008.  Said Security Deed secures a Note in the original principal amount of $260,807.00.  The promissory note has been duly endorsed.

4.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due.  As of July 1, 2023, the post-petition arrearage owed to Movant is $3,953.58 and consists of three (3) monthly mortgage payments at $1,591.07, less a suspense balance of $819.63. An additional payment will come due August 1, 2023 and on the first day of each month thereafter until the loan is paid in full.

5.

The current unpaid principal balance due under the loan documents is approximately $228,837.32.   The Property is most recently valued at $300,050.00 by the Richmond County Tax Assessor's Office.

6.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

7.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

8.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be waived;

(d) That Movant be permitted to offer and provide Debtor(s) with information regarding a potential forbearance agreement, loan modification, refinance agreement, or other loan workout/loss mitigation agreement, and to enter into such an agreement with Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

and said Order also instructing the Chapter 13 Trustee to cease

disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

3002.1 shall no longer apply as to Movant, as said Rule only

applies in Chapter 13 cases in which claims secured by a principal

residence are provided for under Section 1322(b)(5) of the Code in

the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.

Date: July 17, 2023

**Robertson, Anschutz, Schneid, Crane
& Partners, PLLC**

/s/ Andrea L. Betts
Andrea L. Betts
Georgia Bar # 432863
13010 Morris Rd., Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: abetts@raslg.com

# SUPPORTING DOCUMENTS

MIN: ███████████████

# NOTE

Loan Number: ███████████

FHA Case No.
███████████

JUNE 3, 2008       TAMPA       FLORIDA
[Date]       [City]       [State]

2303 KIM COURT, HEPHZIBAH, GEORGIA 30815
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means NEIGHBORHOOD FUNDING, INC, A FLORIDA CORPORATION (CFL # MB0310064) and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED SIXTY THOUSAND EIGHT HUNDRED SEVEN AND 00/100 Dollars (U.S. $ 260,807.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 500/1000 percent ( 6.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on JULY 1, 2008 . Any principal and interest remaining on the 1st day of JUNE, 2038 , will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at 324 NORTH DALE MABRY HIGHWAY SUITE 203, TAMPA, FLORIDA 33609 , or at such other place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $ 1,648.48 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE 05/01/08       Page 1 of 3       DocMagic *eFarms* 800-649-1362
www.docmagic.com

(Check applicable box.)

☐  Growing Equity Allonge
☐  Graduated Payment Allonge
☐  Other [specify]:

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR AND 000/1000                          percent (      4.000 %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

---

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08                                    Page 2 of 3                DocMagic *eForms* 800-649-1362
www.docmagic.com

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
JARRETT L. MOYE                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

*[Sign Original Only]*

MULTISTATE - FHA FIXED RATE NOTE
USFHA.NTE  05/01/08

Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Book 01181:0478 Augusta - Richmond County
6/18/2008 13:51:50.03
██████ SECURITY DEED
██████ Augusta - Richmond County
Intangible Tax $783.00

After Recording Return To:
NEIGHBORHOOD FUNDING, INC
324 NORTH DALE MABRY HIGHWAY SUITE 203
TAMPA, FLORIDA 33609
Loan Number: ██████████

**McLeod & Dowling**
**4420 Evans to Locks Road**
**Evans, GA 30809**
RC08-1610

———— [Space Above This Line For Recording Data] ————

## SECURITY DEED

FHA CASE NO.
██████████

MIN: ██████████

THIS SECURITY DEED ("Security Instrument") is given on    JUNE 3, 2008
The grantor is JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND
SEPARATE PROPERTY
                                                        ("Borrower").
The Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee
for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. (888) 679-MERS.  NEIGHBORHOOD FUNDING, INC, A FLORIDA
CORPORATION                                                ("Lender")
is organized and existing under the laws of  FLORIDA
and has an address of 324 NORTH DALE MABRY HIGHWAY SUITE 203, TAMPA,
FLORIDA 33609
Borrower owes Lender the principal sum of   TWO HUNDRED SIXTY THOUSAND EIGHT
HUNDRED SEVEN AND 00/100               Dollars (U.S. $  260,807.00      ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on  JUNE 1, 2038          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest,
and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,
advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of
Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower
does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns)
and the successors and assigns of MERS with power of sale, the following described property located in
RICHMOND  County, Georgia:

Book 01181:0479 Augusta - Richmond County
06/19/2008 13:51:50.03

SEE ATTACHED LEGAL DESCRIPTION EXHIBIT A
A.P.N.:

which has the address of    2303 KIM COURT

                                                    [Street]
      HEPHZIBAH            , Georgia        30815           ("Property Address"):
        [City]                              [Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
1.  **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
2.  **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements

FHA GEORGIA SECURITY DEED - MERS          Page 2 of 8          DocMagic eFormas 800-649-1362
6/96                                                              www.docmagic.com

or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations

FHA GEORGIA SECURITY DEED - MERS
6/96                                    Page 3 of 8                    DocMagic *eFarms* 800-649-1362
www.docmagic.com

Book 01181-0481 Augusta - Richmond County
06/19/2008 13:51:50.03

concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

    **6.   Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

    **7.   Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

    If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

    Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

    **8.   Fees.** Lender may collect fees and charges authorized by the Secretary.

    **9.   Grounds for Acceleration of Debt.**

        **(a)  Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

            (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

        **(b)  Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

            (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

            (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

        **(c)  No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

FHA GEORGIA SECURITY DEED - MERS
6/96                        Page 4 of 8                    *DocMagic* ℰℱℴℛℳℒ 800-649-1362
www.docmagic.com

Book 01181:0482 Augusta - Richmond County
06/19/2008 13:51:50.03

(d)  Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  Mortgage Not Insured.  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within    60  DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to    60  DAYS                      from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  Borrower Not Released; Forbearance by Lender Not a Waiver.  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender.  Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower.  Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14.  Governing Law; Severability.  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.  To this end the provisions of this Security Instrument and the Note are declared to be severable.

15.  Borrower's Copy.  Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA GEORGIA SECURITY DEED - MERS
6/96                                              Page 6 of 8                        DocMagic eForms  800-649-1362
                                                                                     www.docmagic.com

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

Book 01181:0484 Augusta - Richmond County
06/19/2008 13:51:50.03

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] ACKNOWLEDGMENT  WAIVER | |
| | RIDER | |

Book 01181-0485 Augusta - Richmond County
06/19/2008 13:51:50.03

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)      _____ (Seal)
JARRETT L. MOYE        -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                                -Borrower

_____ (Seal)      _____ (Seal)
                       -Borrower                                -Borrower

_____[Space Below This Line For Acknowledgment]_____

Signed, sealed and delivered on this ___3___ day of __June, 2008__ in the presence of:

_____                    _____
Unofficial Witness                           Notary Public, State of Georgia

                                             Printed Name: CHERYL CAVENAUGH

                                             My commission expires: _____

FHA GEORGIA SECURITY DEED - MERS             DocMagic *Services 800-649-1362
6/96                    Page 8 of 8          www.docmagic.com

## Exhibit "A"

All that tract or parcel of land, together with all buildings and improvements thereon, situate, lying and being in the State of Georgia, County of Richmond, being known and designated as Lot 52, Block G, Section IV, Walton Acres Subdivision as shown on a plat recorded in the Office of the Clerk of Superior Court of Richmond County, Georgia, in Realty Reel 829. Page 2145, reference is hereby made to said plat for a more accurate description as to the metes, bounds and location of said property.

Subject to all restrictions of record.

Tax Map & Parcel #

Address:  2303 Kim Court,  Hephzibah GA 30815

Derivation:  Book 1149, Page 2472

File Number
Legal Description with Non Homestead
Closer's Choice

Book 01181:0487 Augusta - Richmond County
06/19/2008 13:51:50.03

Loan Number:

# ACKNOWLEDGMENT AND WAIVER
## OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this
3rd  day of  JUNE, 2008           , and is incorporated into and shall be deemed to
amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the
same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to
NEIGHBORHOOD FUNDING, INC, A FLORIDA CORPORATION

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2303 KIM COURT, HEPHZIBAH, GEORGIA 30815

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower
and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE
RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO
LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY
GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN
SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY
DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE
VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON
OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE
EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT
SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED;
(3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS
PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID
SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND
GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF
GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT
ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY,
INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN
TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO
AND MADE A PART OF THE SECURITY DEED.

Book 01181:0488 Augusta - Richmo
06/19/2008

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
In the presence of:

_____
Unofficial Witness

_____ (Seal)
JARRETT L. MOYE          -Borrower

_____
Notary Public

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER
FOR USE WITH GA SECURITY INSTRUMENT
10/31/05                        Page 2 of 3

DocMagic EForms 800-649-1362
www.docmagic.com

Book 01184-0490 Augusta - Richmond County
06/19/2008 13:51:50.03

### CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this _____ day of   6/3/08

_____ Notary Public

_____ Closing Attorney

(Notary seal: CHERYL CAVANAUGH / NOTARY PUBLIC / EXP 09-08-2008 / COLUMBIA COUNTY, GA)

Filed in this office:
Augusta - Richmond County
06/19/2008 13:51:50.03
Elaine C. Johnson
Clerk of Superior Court



**1638**   <sup>Pg</sup>**1434**

Filed and Recorded:
**7/24/2018 10:34:21 AM**
Hattie Holmes Sullivan
Clerk of Superior Court
Augusta Richmond County.

Recording Fee: $7.00

Prepared by, Recording Requested By and Return to:
SELENE FINANCE LP
9990 RICHMOND AVE., SUITE 400 SOUTH
HOUSTON, TX 77042

# ASSIGNMENT OF SECURITY DEED

Min:                              MERS Phone:

*FOR VALUE RECEIVED,*
ASSIGNOR: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEIGHBORHOOD FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**, whose MERS address is P.O. Box 2026, Flint, MI 48501-2026, does hereby assign and transfer to
ASSIGNEE: **SELENE FINANCE LP,** whose address is *9990 RICHMOND AVE, STE 400 S, HOUSTON, TX 77042*, all its right, title and interest in and to the described Security Deed:
BORROWER: **JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**
BENEFICIARY: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR NEIGHBORHOOD FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**
DATED: **6/3/2008**              AMOUNT: **$260,807.00**
RECORDED: **6/19/2008** at Book **1181** Page **478**, Instrument or Document
in the **RICHMOND** County Clerk's Office, State of **GEORGIA**.

Property Address: 2303 KIM COURT, HEPHZIBAH, GEORGIA 30815

Executed this    *7-12-2018*

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NEIGHBORHOOD FUNDING, INC., ITS SUCCESSORS AND ASSIGNS**

By:    DONNA BRAMMER
Title:   VICE PRESIDENT (Georgia must be signed by a Vice President or higher)

Signed, Sealed and Delivered this   *12*   day of   *July*  , *2018*   in the presence of

_____ (Witness)
      V. Cumbie       (Printed Name)

Notary Public in and for the State of TEXAS and County of HARRIS
Notary's Printed Name: JOSE BERRUETE
My Commission Expires: 8/8/2021

JOSE BERRUETE
Notary Public, State of Texas
Comm. Expires 08-08-2021
Notary ID 131238560

1/1

After Recording Return To:
**SERVICELINK**
**ATTN: LOAN MODIFICATION**
**SOLUTIONS**
**3220 EL CAMINO REAL**
**IRVINE, CA  92602**

**TRUE AND CERTIFIED COPY**

*Ae  7/7/17*

_____*[Space Above This Line For Recording Data]*_____

**Original Principal Amount $260,807.00**
**Unpaid Principal Amount $230,628.68**
**New Principal Amount $234,923.91**
**Total Cap Amount $4,295.23**

**FHA/VA Case No.** ▮▮▮▮

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I")[1] : JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY
Lender or Servicer ("Lender"): SELENE FINANCE LP
**"MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the mortgagee under the Mortgage.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS.**

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 06/03/2008
Loan Number ▮▮▮▮
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 2303  KIM COURT, HEPHZIBAH, GA 30815
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:

Original security instrument in the amount of **$260,807.00** and recorded on **06/19/2008** in Book, Volume, or Liber No. **N/A**, at Page **N/A** (or as Instrument No ▮▮▮▮, in the Office of the County Clerk or Register of **RICHMOND** County, State of Georgia.

_____

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I."  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Georgia Home Affordable Modification Agreement – Non-GSE –

(page 1 of 11 pages)
00177GA 09/15 Rev. 03/17

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement.  This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.      **My Representations and Covenants**.  I certify, represent to Lender, covenant and agree:

      A.      I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

      B.      One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

      C.      There has been no impermissible change in the ownership of the Property since I signed the Loan Documents.  A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

      D.      I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

      E.      Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

      F.      If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

      G.      I have made or will make all payments required under a trial period.

2.      **Acknowledgements and Preconditions to Modification.**  I understand and acknowledge that:

      A.      If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate.  In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

      B.      I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred.  I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.**  If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **05/01/2017** (the "Modification Effective Date") and all unpaid late charges that remain unpaid late will be waived.  I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect.  The first modified payment will be due on **06/01/2017**.

A.   The Maturity Date will be: **05/01/2047.**

B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.The new principal balance of my Note will be **$234,923.91** (the "New Principal Balance").  I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement.  I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   Interest at the rate of **4.500%** will begin to accrue on the New Principal Balance as of **05/01/2017** and the first new monthly payment on the New Principal Balance will be due on **06/01/2017**.  My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1 - 30 | 4.500% | 05/01/2017 | $1,190.32 | $475.03, may adjust periodically | $1,665.35, may adjust periodically | 06/01/2017 | 360 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.   My modified Loan will not have a negative

amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.    If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.    **Additional Agreements**. I agree to the following:

A.    That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents);   or (iii) the Lender has waived this requirement in writing.

B.    That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.    To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.    That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G.    That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or

---

**Georgia Home Affordable Modification Agreement – Non-GSE –**

*(page 4 of 11 pages)*
00177GA 09/15 Rev. 03/17

transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.   That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.   That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.   That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.   That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.   Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to

---

take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.   That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.   If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

---

In Witness Whereof, the Lender and I have executed this Agreement.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Home Affordable Modification Agreement and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
JARRETT L. MOYE         -Borrower                             -Borrower

Mailing Address: **2303 KIM CT, HEPHZIBAH, GA 30815**         Mailing Address:

_____ (Seal)          _____ (Seal)
                       -Borrower                             -Borrower

Mailing Address:                         Mailing Address:

**ACKNOWLEDGMENT**

State of Georgia                                    §
                                                   §
County of _Richmond_                               §

This record was acknowledged before me on _June 30, 2017_ by
JARRETT L. MOYE who proved to me on the basis of satisfactory evidence to be the person(s) who
appeared before me.

_____ Personally Known
or
___✓___ Produced Identification

Type and # of ID (last 4 digits)    _GDDL 2678_

ID Expiration Date    _9/27/20_

                                     _6-30-17_
Unofficial Witness                   Date

_____
Printed, Typewritten, or Stamped Name

                          _Tracy D. Padeni_
                          _____
                          Signature of Notary Public

                          _Tracy A. Padeni_
                          _____
                          (Name of Notary, Typed, Stamped or Printed)
                          Notary Public State of Georgia

(Stamp/Seal)             My Commission Expires: _____

                          ┌─────────────────────────────────┐
                          │        TRACY A PADENI           │
                          │  Notary Public - State of Georgia │
                          │         Richmond County          │
                          │ My Commission Expires Aug 18, 2019 │
                          └─────────────────────────────────┘

Georgia Home Affordable Modification Agreement – Non-GSE –                    (page 8 of 11 pages)
                                                                             00177GA 09/15 Rev. 03/17

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SELENE FINANCE LP

By: _____
    Tonya Higginbotham        Vice President        -Lender

_____
Date of Lender's Signature

_____  7/6/17
Witness Signature              (Date)

Printed Name: Brittany Morgan

**ACKNOWLEDGMENT**

State of __Florida__

County of __Duval__

foregoing instrument was acknowledged before me this July 6, 2017   The
__Tonya Higginbotham__                Vice President          of SELENE FINANCE LP, a          by
DELAWARE limited partnership, on behalf of the limited partnership. He/she is personally known to me
or who has produced _____ as identification.

_____
Signature of Person Taking Acknowledgment

__Troy Mendoza__
Name Type, Printed or Stamped

_____
Title or Rank

Serial Number, if any: _N/A_

My Commission Expires: _3/7/2021_

TROY MENDOZA
Notary Public – State of Florida
Commission # GG 080643
My Comm. Expires Mar 7, 2021
Bonded through National Notary Assn.

(Seal)

Georgia Home Affordable Modification Agreement – Non-GSE –                    (page 9 of 11 pages)
                                                                            00177GA 09/15 Rev. 03/17

**MERS**

Tonya Higginbotham

Vice President

Mortgage Electronic Registration Systems, Inc. - ~~Nominee for Lender~~

Brittany Morgan                7/6/17
Witness Signature                (Date)

Printed Name Brittany Morgan

## ACKNOWLEDGMENT

State of **Florida**

County of **Duval**

§
§
§

The foregoing instrument was acknowledged before me this July 6, 2017 by **Tonya Higginbotham**, Vice President of **Mortgage Electronic Registration Systems, Inc.** ~~as nominee for SELENE FINANCE LP, its successors and assigns, a Delaware corporation~~, on behalf of the corporation. He/she is personally known to me or who has produced as identification.

Signature of Person Taking Acknowledgment
Troy Mendoza

Name Type, Printed or Stamped

N/A
Title and Rank

Serial Number, if any: N/A

My Commission Expires: 3/7/2021

TROY MENDOZA
Notary Public – State of Florida
Commission # GG 080643
My Comm. Expires Mar 7, 2021
Bonded through National Notary Assn.

(Seal)

Loan Originator Organization: SELENE FINANCE LP, NMLSR ID: 6312
Individual Loan Originator's Name NMLSR ID: N/A

**EXHIBIT A**

BORROWER(S): JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

LOAN NUMBER: █████████

LEGAL DESCRIPTION:

ALL THAT TRACT OR PARCEL OF LAND, TOGETHER WITH ALL BUILDINGS AND IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE STATE OF GEORGIA, COUNTY OF RICHMOND, BEING KNOWN AND DESIGNATED AS LOT 52, BLOCK G, SECTION IV, WALTON ACRES SUBDIVISION AS SHOWN ON A PLAT RECORDED IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF RICHMOND COUNTY, GEORGIA, IN REALTY REEL 829, PAGE 2145, REFERENCE IS HEREBY MADE TO SAID PLAT FOR A MORE ACCURATE DESCRIPTION AS TO THE METES, BOUNDS AND LOCATION OF SAID PROPERTY.

Parcel ID Number: ████████
ALSO KNOWN AS: 2303 KIM COURT, HEPHZIBAH, GA 30815

Loan No. ████

Borrowers ("Borrower"): JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

# LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this **15th** day of, **June, 2017,** by and between the undersigned borrower (the "Borrower") and **SELENE FINANCE LP,** (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS.   In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

<u>1.  Costs and Expenses</u>

All costs and expenses incurred by Lender in connection with this Agreement shall be borne by Lender and not paid by Borrower.

<u>2.  Escrow Items</u>

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked.  Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

_____ (Seal)   _____ (Seal)
JARRETT L. MOYE                 -Borrower                                   -Borrower

_____ (Seal)   _____ (Seal)
                                -Borrower                                   -Borrower

Loan No █████████
Borrowers ("Borrower"): **JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**

# COMPLIANCE AGREEMENT

In consideration of **SELENE FINANCE LP** ("Lender") modifying the first lien mortgage loan (the "Loan"), in connection with the property located at **2303 KIM COURT, HEPHZIBAH, GA 30815** (the "Modification"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Modification. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Modification to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument underlying the Modification, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVICE OF COUNSEL.

Date: 6/30/17.

_____ (Seal)        _____ (Seal)
JARRETT L. MOYE                -Borrower                                       -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                       -Borrower

Compliance Agreement
W3078D                                    Page 1 of 1                    26357MU 02/16 Rev. 01/17

After recording return to:
SERVICELINK
ATTN:   LOAN    MODIFICATION
SOLUTIONS
3220 EL CAMINO REAL
IRVINE, CA 92602

—————————————————[Space Above This Line For Recording Data]———————————————

Loan No.: █████████

FHA/VA Case No.: ████████

# GEORGIA PARTIAL CLAIM SECURITY DEED
# (Secondary Lien)

THIS SUBORDINATE DEED OF TRUST ("Security Instrument") is given on **June 15, 2017**. The Borrower is **JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**
Whose address is **2303 KIM CT, HEPHZIBAH, GA 30815**
("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, and whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of **Fourteen Thousand Three Hundred Thirty and 23/100ths Dollars (U.S. $14,330.23)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **May 1, 2047**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with the power of sale the following described property located in **RICHMOND** County, Georgia:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

which has the address of **2303 KIM COURT, HEPHZIBAH, GA 30815**, ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of

---

record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances or record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal.** Borrower shall pay when due the principal of the debt evidenced by the Note.

**2. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**3. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the Note without that Borrower's consent.

**4. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 10410 or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**5. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**6. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**7. Acceleration; Remedies.** If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 4 of the Subordinate Note, Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. § 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the Note or this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law. If the Property is sold pursuant to this Section 7, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

**8. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**9. Waiver of Homestead.** Borrower waives all rights of homestead exemption in the Property.

**10. Assumption Not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**11. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any security deed, mortgage, deed of trust or other encumbrance with a lien which has priority over this Security Instrument to give notice to Lender, at Lender's address set forth on page one of this Security Instrument, of any default under the superior encumbrance and of any sale or other foreclosure action.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

Signed, sealed and delivered in the presence of:

_____          _____ (Seal)
Unofficial Witness                        JARRETT L. MOYE          -Borrower

_____          Mailing Address: **2303 KIM CT, HEPHZIBAH, GA**
Printed, Typewritten, or Stamped Name     **30815**

                                          _____ (Seal)
                                                                   -Borrower

                                          Mailing Address:

                                          _____ (Seal)
                                                                   -Borrower

                                          Mailing Address:

                                          _____ (Seal)
                                                                   -Borrower

                                          Mailing Address:

## ACKNOWLEDGMENT

State of Georgia                              §
County of Richmond                           §
                                             §

This record was acknowledged before me on _June 30 2017_ by **JARRETT L. MOYE** who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____ Personally Known
        or
  √     Produced Identification

Type and # of ID (last 4 digits) _GXDL 2678_

ID Expiration Date _____ 9/27/20

_____
Signature of Notary Public

_____
(Name of Notary, Typed, Stamped or Printed)
Notary Public State of Georgia

(Stamp/Seal)                    My Commission Expires: _____

```
┌─────────────────────────────────┐
│       TRACY A PADENI            │
│ Notary Public - State of Georgia │
│        Richmond County          │
│ My Commission Expires Aug 18, 2019 │
└─────────────────────────────────┘
```

**Loan Originator Organization: SELENE FINANCE LP, NMLSR ID: 6312**
**Individual Loan Originator's Name NMLSR ID: N/A**

### EXHIBIT A

BORROWER(S): JARRETT L. MOYE, AN UNMARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

**LOAN NUMBER** ███████████

**LEGAL DESCRIPTION:**

ALL THAT TRACT OR PARCEL OF LAND, TOGETHER WITH ALL BUILDINGS AND IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE STATE OF GEORGIA,

---

COUNTY OF RICHMOND, BEING KNOWN AND DESIGNATED AS LOT 52, BLOCK G, SECTION IV, WALTON ACRES SUBDIVISION AS SHOWN ON A PLAT RECORDED IN THE OFFICE OF THE CLERK OF SUPERIOR COURT OF RICHMOND COUNTY, GEORGIA, IN REALTY REEL 829, PAGE 2145, REFERENCE IS HEREBY MADE TO SAID PLAT FOR A MORE ACCURATE DESCRIPTION AS TO THE METES, BOUNDS AND LOCATION OF SAID PROPERTY.

Parcel ID Number █████████
ALSO KNOWN AS: 2303  KIM COURT, HEPHZIBAH, GA 30815

# Richmond County, GA

## Summary

| | |
|---|---|
| Parcel Number | |
| Location Address | 2303 KIM CT |
| Legal Description | WALTON ACRES SEC 4 BLK G LOT 52 |
| | (Note: Not to be used on legal documents.) |
| Class | R3 - Residential Lots |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| Tax District | (002) RICHMOND COUNTY |
| Millage Rate | |
| Acres | 28.006 |
| | 0.63 |
| Neighborhood | 7C3363 - 7C3363 WALTON ACRES |
| Homestead Code | No - |
| Topography | ROLLING |



02/11/2008 02:04 PM

View Map

## Online Filings

Click HERE to change mailing address

## Owner

**Primary Owner**
MOYE JARRETT L
2303 KIM CT
HEPHZIBAH, GA 30815

## Land

| Description | Calculation Method | Square Footage | Frontage | Depth |
|---|---|---|---|---|
| 3363 - R00 - LT | UNIT | 27477 | 137 | 213 |

## Residential Improvement Information

| | |
|---|---|
| Card | 1 |
| Style | One Family |
| Heated Square Feet | 2688 |
| Exterior Wall | BRICK VENEER (FACE) |
| Attic Square Feet | 0 |
| Finished Bsmt Sqft | 0 |
| Total Bsmt Sqft | 0 |
| Year Built | 2004 |
| Roof Type | Architectural Shingles |
| Flooring Type | Carpet & Pad |
| Heating Type | CENT HEAT/AC |
| Number of Rooms | 8 |
| Number of Bedrooms | 3 |
| Number of Full Bathrooms | 2 |
| Number of Half Bathrooms | 1 |
| Condition | GOOD |
| Fireplaces\Appliances | Direct-Vented, Gas/Electric |

## Sales

| Sale Date | Deed Book/Page | Plat Book/Page | Sale Price | Reason | Grantor | Grantee |
|---|---|---|---|---|---|---|
| 6/3/2008 | 1181 476 | 829 2145 | $0 | QUIT CLAIM DEED | LEXIGON LLC | MOYE JARRETT L |
| 6/3/2008 | 1181 474 | 829 2145 | $0 | QUIT CLAIM DEED | DOBBINS MARK | MOYE JARRETT L |
| 6/3/2008 | 1181 472 | 829 2145 | $264,900 | FAIR MARKET VALUE | MARK DOBBINS/LEXIGON LLC | MOYE JARRETT L |
| 10/9/2007 | 1149 2472 | 829 2145 | $190,000 | BANK/FINANCIAL INSTITUTION | U S BANK NATIONAL ASSOCIATION | DOBBINS MARK/LEXIGON LLC |
| 8/7/2007 | 1139 226 | 829 2145 | $207,824 | LEGAL - FORECLOSURES | DUNBAR ANDREA R | U S BANK NATIONAL ASSOCIATION |
| 7/12/2004 | 939 2069 | 829 2145 | $213,485 | FAIR MARKET VALUE | KENNETH SMITH HOMEBUILDERS INC | DUNBAR ANDREA R |
| 11/24/2003 | 901 950 | | $41,800 | LAND MARKET SALE | SOUTHERN SPECIALTY DEVELOPMENT CO INC | KENNETH SMITH HOMEBUILDERS INC |

**Valuation (Appraised 100%)**

| Year | Property Class | LUC | Appraised Land | Appraised Building Value | Total Appraised Value |
|---|---|---|---|---|---|
| 2023 | R3 | 009 | $39,800 | $260,250 | $300,050 |

⊕ Show Historical Appraised Values

**Valuation (Assessed 40%)**

| Year | Assessed Land | Assessed Building Value | Total Assessed Value |
|---|---|---|---|
| 2023 | $15,920 | $104,100 | $120,020 |

⊕ Show Historical Assessed Values

**Assessment Notices**

2021 Assessment Notice (PDF)
2022 Assessment Notice (PDF)

**Photos**

 

**Sketches**



| Room Type | Area |
|---|---|
| A Main Area | 2415 |
| B GARAGE BUILT-IN | 501 |
| C OPEN BRICK PORCH | 276 |
| D BONUS ROOM | 273 |
| E OPEN BRICK PORCH | 160 |

**No data available for the following modules:** Summary - Personal Property, Commercial Improvement Information, Mobile Homes, Prebill Mobile Homes, Accessory Information, Appraised Values - Personal Property.

The data contained on this site is intended for information purposes only. It is based on the best information available at the time of posting and is not warranted. The data may not reflect the most current records.
| User Privacy Policy | GDPR Privacy Notice
Last Data Upload: 7/10/2023, 2:39:23 AM

Contact Us

Developed by

